# EXHIBIT 8

Michael J    s                                          06/26/2006
HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

--oOo--

| | |
|---|---|
| SKYLINE SOFTWARE SYSTEMS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 04-11129 DPW ) |
| KEYHOLE, INC., and GOOGLE, INC., | ) ) ) |
| Defendants. | ) ) |

**CONFIDENTIAL**

DEPOSITION OF

MICHAEL JONES

June 26 and 27, 2006

VOLUME I

(Pages 1 - 377)

HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

REPORTED BY:  SARAH LUCIA BRANN, CSR 3887

LegaLink Boston, a Merrill Company
(617) 542-0039

```
 1                A P P E A R A N C E S

 2

 3  FOR SKYLINE SOFTWARE SYSTEMS, INC.:

 4          MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO
            One Financial Center
 5          Boston, Massachusetts 02111
            BY:  IBRAHIM M. HALLAJ, ESQ.
 6          617.542.6000

 7          MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO
            1440 Page Mill Road
 8          Palo Alto, California 94304
            BY:  FLAVIO M. ROSE, ESQ.
 9          650.251.7712

10

11

12  FOR KEYHOLE, INC. and GOOGLE, INC.:

13          FENWICK & WEST LLP
            275 Battery Street
14          San Francisco, California 94111
            BY:  DARRYL M. WOO, ESQ.
15          415.875.2300

16

17  ALSO PRESENT:

18          MICHAEL KWUN, Litigation Counsel, Google

19          GRETCHEN VOGEL, Videographer, LegaLink

20

21

22

23

24

25
```

```
1           IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MASSACHUSETTS

3                       --oOo--

4  SKYLINE SOFTWARE SYSTEMS,      )
   INC.,                          )
5                                 )
              Plaintiff,          )
6                                 )
         vs.                      ) No. 04-11129 DPW
7                                 )
   KEYHOLE, INC., and GOOGLE,     )
8  INC.,                          )
                                  )
9             Defendants.         )
   _____)
10

11                      --oOo--

12       BE IT REMEMBERED that, pursuant to Notice,

13 and on Monday, June 26, 2006, commencing at 11:20

14 a.m. thereof, at 1400 Page Mill Road, Palo Alto,

15 California, before me, Sarah Lucia Brann, a

16 Certified Shorthand Reporter, personally appeared

17                   MICHAEL T. JONES

18   _____

19 called as a witness by the Plaintiff, who, having

20 been first duly sworn, was examined and testified as

21 follows:

22                      --oOo--

23

24

25
```

| | | | |
|---|---|---|---|
| 12:10:17 | 1 | | your attorneys from the Lockheed Martin references |
| 12:10:20 | 2 | | in your collection? |
| 12:10:21 | 3 | A. | I sent e-mail describing and summarizing |
| 12:10:23 | 4 | | my opinions. |
| 12:10:24 | 5 | Q. | Who did you send that e-mail to, please? |
| 12:10:33 | 6 | A. | To Michelle Lee at Google. |
| 12:10:33 | 7 | Q. | And is Michelle Lee an attorney? |
| 12:10:33 | 8 | A. | That is my understanding, but I have never |
| 12:10:33 | 9 | | seen her, you know, document -- her plaque basically |
| 12:10:38 | 10 | | on the wall. |
| 12:10:40 | 11 | Q. | Okay. So you sent the -- |
| 12:10:43 | 12 | A. | She was represented to me as an |
| 12:10:44 | 13 | | attorney -- |
| 12:10:45 | 14 | Q. | Okay, thanks. |
| 12:10:45 | 15 | A. | -- and it was an attorney-client |
| 12:10:46 | 16 | | privileged conversation, kind of conversation. |
| 12:10:48 | 17 | Q. | We don't want to get into that. But how |
| 12:10:50 | 18 | | about the Kodak-IBM early work? |
| 12:10:54 | 19 | A. | I also -- |
| 12:10:54 | 20 | Q. | When was the last time you saw those? |
| 12:10:54 | 21 | A. | Same time. |
| 12:10:56 | 22 | Q. | And you also referred those to Ms. Lee? |
| 12:10:58 | 23 | A. | I referred to them as examples of the kind |
| 12:11:01 | 24 | | of thing. Now, like I said, those were -- in the |
| 12:11:06 | 25 | | analysis I did, there were much more clear |

```
12:11:12   1  separations between our products and the patent.  So
12:11:14   2  invalidating the patent seemed really -- wasn't so
12:11:20   3  important to me as understanding whether we
12:11:22   4  infringed it, and since we didn't infringe it, I
12:11:26   5  thought there was no reason to worry about
12:11:28   6  invalidating it.  So I didn't really pursue that
12:11:31   7  with great vigor.  I actually just did a cursory
12:11:33   8  analysis, I am sure the same kind of analysis you
12:11:35   9  could do with Google search in a day.  You would
12:11:36  10  know all the same things.
12:11:38  11       Q.   Have you done a more detailed analysis of
12:11:38  12  the patent's validity since that cursory analysis?
12:11:39  13       A.   I personally have not, no.
12:11:42  14       Q.   So the last time you analyzed the patent's
12:11:45  15  validity was about two years ago?
12:11:48  16       A.   Yes.  My thinking was that things that
12:11:52  17  happened since then wouldn't invalidate an older
12:11:54  18  patent, so my research was always for things that
12:11:58  19  were before.
12:11:59  20       Q.   So, since your cursory analysis about two
12:12:03  21  years ago, you haven't done a subsequent examination
12:12:06  22  of prior art and the '189 patent to determine its
12:12:10  23  validity?
12:12:11  24       A.   I have not done --
12:12:13  25            MR. WOO:  Object to the form.  Wait.  So
```

```
12:33:43  1  things that are related, kind of the whole
12:33:46  2  prosecution, I think, of the patent.
12:33:47  3            And I felt like the Cosman article was so
12:33:51  4  obviously aligned and so similar that to not mention
12:33:55  5  it was odd.  So it was the oddness of that and some
12:34:00  6  of the sort of tangential nature of some of the
12:34:04  7  other things that were cited that almost misdirected
12:34:07  8  the examiner off to like looking at unrelated
12:34:09  9  things, that I thought, you know, this is really
12:34:11 10  going to confine any reexamination of this patent
12:34:14 11  really to just the claims set.
12:34:15 12            And that was -- my whole goal was not to
12:34:18 13  invalidate or understand invalidation, but to
12:34:22 14  understand kind of what would be the nature of what
12:34:24 15  would be considered valid, to then debate whether or
12:34:28 16  not we infringe it.
12:34:30 17            Our issue at Keyhole was not to invalidate
12:34:33 18  the Skyline patent, nor, as a matter of fact, to
12:34:38 19  even do business with Skyline.  We never really saw
12:34:41 20  them.
12:34:42 21            Our issue was to understand if we were
12:34:45 22  actually infringing, as was suggesting by Skyline.
12:34:48 23  Since their letter to us didn't say what product or
12:34:50 24  what it was that made them think we were infringing,
12:34:50 25  it did give no -- it just said, "We think you
```

```
12:34:55   1  infringe."  It would be like sending a letter to
12:34:58   2  Kodak saying, "I think you infringe."  It was hard
12:35:01   3  to know what to do.
12:35:02   4            So I looked at the patent number to try to
12:35:04   5  understand what it was talking about.  I looked at
12:35:06   6  kind of related art to understand what seemed to be
12:35:08   7  patented.  I looked at trade press to see what was
12:35:11   8  described before they had filed, and said, "Okay, I
12:35:12   9  think, you know, the city is mostly built up.  It's
12:35:15  10  only a couple of lots that are open, so I need to
12:35:18  11  see if we have anything that goes through that
12:35:20  12  territory."
12:35:21  13            I looked through the code, and we didn't.
12:35:22  14  I looked through it with the engineers.  I talked
12:35:24  15  through things.  I felt comfortable.  And so that
12:35:27  16  was then the basis of my opinion.
12:35:29  17       Q.   That was the basis of your opinion that
12:35:31  18  what?  The patent was valid or invalid?
12:35:35  19       A.   That we did not infringe their patent.  I
12:35:37  20  didn't -- like I said, I didn't perform an
12:35:39  21  invalidity analysis.
12:35:41  22       Q.   But today as you sit here in your personal
12:35:44  23  capacity, and having reviewed the '189 patent in
12:35:47  24  detail, and having familiarity with the content of
12:35:51  25  the Cosman reference listed here, can you tell me
```

Page 817

```
18:33:01  1              CERTIFICATE OF REPORTER
18:33:01  2         I, SARAH LUCIA BRANN, a Certified
18:33:01  3    Shorthand Reporter, hereby certify that the witness
18:33:01  4    in the foregoing deposition was by me duly sworn to
18:33:01  5    tell the truth, the whole truth, and nothing but the
18:33:01  6    truth in the within-entitled cause;
18:33:01  7         That said deposition was taken down in
18:33:01  8    shorthand by me, a disinterested person, at the time
18:33:01  9    and place therein stated, and that the testimony of
18:33:01 10    the said witness was thereafter reduced to
18:33:01 11    typewriting, by computer, under my direction and
18:33:01 12    supervision;
18:33:01 13         That before completion of the deposition,
18:33:01 14    review of the transcript [ ] was [X] was not
18:33:01 15    requested.  If requested, any changes made by the
18:33:01 16    deponent (and provided to the reporter) during the
18:33:01 17    period allowed are appended hereto.
18:33:01 18         I further certify that I am not of counsel
18:33:01 19    or attorney for either or any of the parties to the
18:33:01 20    said deposition, nor in any way interested in the
18:33:01 21    event of this cause, and that I am not related to
18:33:01 22    any of the parties thereto.
18:33:01 23         DATED: December 8, 2006
18:33:01 24              _____
18:33:01 25              SARAH LUCIA BRANN, CSR No. 3887
```

**CERTIFIED TRANSCRIPT**
**LEGALINK BOSTON**