```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                                    )
SKYLINE SOFTWARE SYSTEMS, INC.,     )
                                    )
            Plaintiff,              )     CIVIL ACTION NO.
                                    )     06-10980-DPW
     v.                             )
                                    )
KEYHOLE, INC. and GOOGLE, INC.,     )
                                    )
            Defendants.             )
_____)
```

MEMORANDUM AND ORDER
March 7, 2007

Plaintiff, Skyline Software Systems, Inc. ("Skyline"), and Defendants, Keyhole, Inc. and Google, Inc. ("Google"), have each moved for summary judgment regarding infringement and validity of United States Patent No. 6,496,189 (the "'189 patent"). The '189 patent, owned by Skyline, describes a method and apparatus for streaming three-dimensional terrain data over a network, using data blocks arranged in a hierarchical data structure to improve performance. Skyline has alleged that Google software for three-dimensional terrain visualization, specifically Google Earth, infringes the '189 patent. For the reasons set forth below, I find as a matter of law that Google does not infringe the '189 patent, and will grant the Google motion for summary judgment as to infringement and deny that of Skyline. Because my reasoning may influence the parties' approach to the validity question, I

will deny the summary judgment motions as to validity and invalidity, without prejudice to rebriefing and reassertion on or before April 20, 2007.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is as appropriate in a patent case as it is in any other matter. *Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). Once the moving party shows that there is no genuine issue of material fact, the nonmovant must produce evidence to show that a trialworthy dispute exists. *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1st Cir. 2004).

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413,

427 (1st Cir. 1996)). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 154 (1st Cir. 2006) (internal citation omitted). In ruling on a motion for summary judgment, a court must view "the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 588 (1st Cir. 2004) (internal citation omitted).

Cross-motions for summary judgment do not alter the basic summary judgment standard, but rather require courts to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. *See Adria Int'l Group, Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001); *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996). Thus, in deciding cross-motions for summary judgment, courts must consider each motion separately, drawing all reasonable inferences against each movant in turn. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

## II. INFRINGEMENT ANALYSIS

Determination of patent infringement entails a two-step analysis: (1) claim construction, a question of law; and (2) comparing the accused product to the construed claims, a question of fact. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 984

(Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). I took the first step when I construed the disputed terms in the '189 patent in March 24, 2006, *Skyline Software Systems, Inc. v. Keyhole, Inc.*, 421 F.Supp.2d 371 (D. Mass. 2006) and November 16, 2006 Memoranda. The summary judgment motions before me with respect to infringement require that I now compare the asserted claims of the '189 patent to the accused Google Earth products.[1]

1.  <u>Legal Standard</u>

The legal standard for patent infringement is firmly settled: "[t]o prove infringement, the patentee must show that the accused device contains each limitation of the asserted claim, . . . or an equivalent of the limitation." *Beckson Marine*

---

[1] The parties disagree over how the accused Google Earth products should be evaluated - individually or as a unified system. Skyline's First Amended Complaint of November 9, 2006 sheds little light on the issue. It simply states:
> On information and belief, the products of which Skyline currently is aware that infringe the '189 Patent include, but are not limited to: Keyhole Pro, Keyhole 2 Pro, Keyhole LT, Keyhole 2 LT, Keyhole NV, Keyhole 2 NV, Earthviewer, Keyhole Enterprise Client, Keyhole 2 Enterprise Client, Keyhole EC, Keyhole 2 EC, Keyhole's Enterprise Solutions products, Keyhole 2 Fusion LT, Keyhole 2 Server, Google Earth, Google Earth Plus, Google Earth Pro, Google Earth Enterprise Solution (including Google Earth Fusion, Google Earth Server and Google Earth Enterprise Client), the Geo Coder Server and any predecessor or successor products and related software services provided by Defendants in connection with these products.

First Amended Complaint, ¶8.

For purposes of this summary judgment analysis, I have considered the evidence in the light most favorable to Skyline, and have treated the accused products as a unified whole.

*Inc. v. NFM, Inc.*, 292 F.3d 718, 724 (Fed. Cir. 2002). Every limitation recited in the claim must appear in the accused device, so that "the properly construed claim reads on the accused device exactly." *KCJ Corp. v. Kinetic Concepts., Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000), *citing Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996). If any claim limitation is absent from the accused product, "there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000), *cert. denied*, 531 U.S 993 (2000). When material facts pertaining to the operation of an accused device are undisputed, the issue of infringement is particularly susceptible to summary judgment, because infringement is then a pure question of law. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997).

    2.   <u>Analysis</u>

Skyline has moved for summary judgment of infringement specifically on Claims 1 and 12, while Google has moved for summary judgment of noninfringement on all asserted claims of the '189 patent, *i.e.*, Claims 1-3, 5, 7-9, 11-12, 16, 18-19, and 21-24. I will focus on certain salient limitations of Claims 1 and 12, because, as will appear, disposition of those claims is sufficient to resolve the infringement dispute.

    *a.   Claim 1*

Claim 1 reads:

> A method of providing data blocks describing three-dimensional terrain to a renderer, the data blocks belonging to a hierarchical structure which includes blocks at a plurality of different resolution levels, the method comprising:
>    receiving from the renderer one or more coordinates in the terrain along with indication of a respective resolution level;
>    providing the renderer with a first data block which includes data corresponding to the one or more coordinates, from a local memory;
>    downloading from a remote server one or more additional data blocks at a resolution level higher than the resolution level of the first block which includes data corresponding to the one or more coordinates if the provided block from the local memory is not at the indicated resolution level.

(col. 16, ll. 28-43). The method claimed, at a minimum, has three broad elements or limitations: "receiving from the renderer" specific information, "providing the renderer" particular data, and "downloading from a remote server" certain information when specific conditions are satisfied. To prevail on its summary judgment motion, Skyline must demonstrate that there is no genuine issue of disputed fact to contradict the proposition that the accused Google Earth products contain each of the limitations in Claim 1, either literally or under the doctrine of equivalents. In contrast, to prevail on its summary judgment motion, Google must simply show that Skyline cannot meet its burden on at least one limitation of the claim.

>    *(1) receiving from the renderer one or more*
>        *coordinates in the terrain along with indication*
>        *of a respective resolution level*
>
>  *(a) "receiving from the renderer"*

The first, and perhaps most critical, question that arises in evaluating infringement of Claim 1 is whether the accused Google Earth products contain a "renderer." As defined in the *Markman* Order of March 24, 2006, a renderer is a:

> software and/or hardware object that performs at least the following functions: (1) determining and providing to another object the required coordinates in the terrain along with a respective resolution level; (2) receiving the data blocks corresponding to the specified coordinates; and (3) using the received data blocks to display a three-dimensional image.

421 F.Supp.2d 371, 388 (D. Mass. 2006). The second *Markman* Order of November 16, 2006 clarified that "receiving from the renderer" means "something distinct from the renderer receiving from the renderer." Memorandum and Order of November 16, 2006, at 10. In that Memorandum, I noted that:

> Skyline has expressed concern over the use of the word "object," which has a specific meaning in the context of computer programming. "Object," as used in this discussion, should not be read to refer specifically to software objects of the sort used in object-oriented programming. I use "object" in the more general sense of a "thing," which could be a software object, but need not be.

*Id.* at 9 n.7 (internal citation omitted).

Skyline has not identified any "thing" that corresponds to the renderer as defined in the '189 patent. Skyline admits as much in its Corrected Memorandum in Support of Its Motion for

7

Summary Judgment of Infringement, when it accuses Google of "quibbling that these three functions [of the renderer] are not performed by the same 'logical entity' or 'object'."  The demand that a "renderer" be identifiable as a discrete entity of some sort is not a quibble, however; it is fundamental to a finding of infringement.  The '189 patent describes a particular way of structuring a system for streaming three-dimensional data.  Not any system that achieves the same result is covered.  To succeed on its motion for summary judgment, Skyline must show that the accused Google Earth products infringe on the particular system described in the '189 patent.  The "renderer" is at the core of that system.  The failure to identify *some thing* that performs the functions of the renderer is fatal to Skyline's motion for summary judgement on Claim 1.[2]

The inverse of the question arises in considering Google's motion for summary judgment of noninfringement of Claim 1.  Here,

---

[2] Skyline's ultimate position, as presented at the summary judgment oral argument, appears to be that the Google Earth Client, a "software application, running on the local processor," itself "performs the three renderer functions." [Skyline Slide #29] However, Skyline also suggests that unspecified pieces of the Google Earth Client source code perform the functions of the renderer, suggesting a more granular definition. [*Id.*]  In either formulation, the Skyline position, which I reject, erroneously conflates the functions of the renderer with the separate thing that is a renderer.  This takes considerable and unwarranted poetic license with the *Markman* construction and, as I noted during the hearing on the motions, calls to mind Yeats' question: "How can we know the dancer from the dance?"  W. B. Yeats, *Among School Children*, THE COLLECTED POEMS OF W. B. YEATS, 215, 217 (Richard J. Finneran ed., rev. 2d ed. 1996).

the question is whether any reasonable fact finder examining this factual record could find that a "renderer" exists in the accused Google Earth products.  Even viewing the evidence in the light most favorable to Skyline and drawing all inferences in its favor, the undisputed evidence demonstrates that no such renderer exists in the Google Earth system.

Even if I consider the Google Earth Enterprise suite as a whole, and view the Google Earth Client as the "renderer," Skyline's claim fails, because the Google Earth Server, the non-renderer entity, does not pass back coordinates in the terrain or resolution levels to the Google Earth Client, as required by Claim 1; it passes back files.[3]  Consequently, Skyline must demonstrate the "renderer" is contained within the Google Earth Client software, and Skyline has failed to provide any evidence that it is.  There is simply not any identifiable subset of the software code that can be analogized to the "renderer," as described in the '189 patent, particularly given the requirement that the renderer receive specified information from other distinct entities.

Skyline identifies several places where *functions or tasks* required of the renderer are performed.  However, identifying a set of tasks which are performed is not the same as identifying an object which performs a set of tasks, even if the end result

---

[3] The Google Earth Server is closer to the "remote server" referenced in Claim 1 than the "renderer."

is the same.  Consider, for example, a coffeemaker.  If a "coffeemaker" is defined as "an object that (1) heats water by means of electricity, (2) causes ground coffee to come into contact with said heated water, and (3) keeps resulting liquid warm," a standard drip coffeemaker would clearly qualify.  One might argue over whether an espresso maker would qualify.  It is clear, however, that a method comprised of a person heating water in an electric kettle, manually pouring the water into a French press full of ground coffee, and keeping the resulting cup of coffee warm on a desk hot plate would not qualify as a "coffeemaker," even though all of the steps described were performed.  If the steps are not performed by a single entity, there is no "object," and hence no "coffeemaker."  Similarly, even if all of the steps described as part of the renderer are performed at some point in the Google Earth code, a contention disputed by Google, Skyline has pointed to no evidence that an identifiable "renderer" exists.  Consequently, Google is entitled to summary judgment of noninfringement on the ground that the accused products do not contain a distinct renderer, as required by Claim 1.

> *(b)   one or more coordinates in the terrain along with indication of a respective resolution level*

Summary judgment of noninfringement in Google's favor is also warranted based on the "one or more coordinates in the

terrain along with indication of a respective resolution level" limitation.  Skyline fails to proffer any evidence that terrain coordinates are passed to the renderer, even assuming for this purpose that a renderer exists, *along with* an indication of a *respective* resolution level.  Instead, Skyline elides the language of the '189 patent, substituting "indication of a resolution level" for "indication of a respective resolution level," and completely ignores the requirement that the coordinates supplied be linked to a particular resolution level.  Skyline identifies places where coordinates are used in the Google Earth code, and it identifies places where resolution levels are indicated.  However, Skyline identifies no situation where the coordinates are provided *along with* a corresponding resolution level, as required by the '189 patent, and the prior claim constructions.[4]  Consequently, Google is entitled to summary judgment on this ground.[5]

---

[4] *See* 421 F.Supp.2d at 385, construing "indication of a respective resolution level" as "the identification of the particular resolution level of the data required."

[5] Because Skyline has failed to proffer sufficient evidence to avoid summary judgment on noninfringement, its own motion for summary judgment must fail on this limitation, as a matter of course.

> *(2) providing the renderer with a first data block which includes data corresponding to the one or more coordinates, from a local memory*

The parties barely address this limitation, except to continue arguing over whether a "renderer" exists to have something provided to it. As discussed above, Skyline has failed to produce countervailing evidence that the accused Google Earth products contain a "renderer," as the term is used in the '189 patent. Consequently, Google is entitled to summary judgment of noninfringement, based on this claim limitation.

> *(3) downloading from a remote server one or more additional data blocks at a resolution level higher than the resolution level of the first block which includes data corresponding to the one or more coordinates if the provided block from the local memory is not at the indicated resolution level*

Neither party disputes that data blocks are downloaded from a remote server. The dispute arises over whether the test performed by Google Earth, a "greater than" test, is sufficient to satisfy the claim limitation that the provided block "is not at" the desired resolution level. I find that it is not.

The parties agree that Google performs a "greater than" test to evaluate whether to continue downloading new data blocks from the server. Skyline argues that this test satisfies the '189 patent claim, because "the claim contains neither the 'equal to' nor the 'greater than' language." While true, this argument misses the point. The '189 patent only requires that the

resolution level of the provided block *not equal* the desired maximum resolution level.  Presumably, if the Google Earth software did both a "greater than" and "less than" test, the claim limitation would be satisfied, even though no "equal to" test, as such, was directly performed.  However, Google Earth does not perform in that manner.  Because only a "greater than" test is performed, downloading continues when the block provided is *less than* the desired resolution level, but also when it is *equal to* the desired resolution level.[6]  Therefore, the accused products do not contain a limitation that downloading only happens when "the provided block . . . is not at the indicated resolution level."

Instead, additional blocks are downloaded in the allegedly infringing Google method when the provided block *is* at the indicated resolution level, and, in some cases, when it *is not* at the desired resolution level, *i.e.*, when the provided block is of lower than desired resolution.  Because one key purpose of the '189 patent is to minimize the download of excess data (outside of the potentially useful nearby data), this difference is significant.  Downloading one additional resolution level of data--the level downloaded when the resolution of the indicated block is equal to the desired resolution level--would generally

---

[6] If X is greater than Y, necessarily X does not equal Y. However, if X is not greater than Y, then X is *either* less than *or* equal to Y.  (5 > 3, but 2 ≯ 3 and 3 ≯ 3)

result in four times as much data as was strictly required for display at the target resolution level, given the quad tree structure (where each child level contains four times as many blocks as the parent level).  In the context of the '189 patent, this increase is quite significant.[7]

Because the material facts as to this limitation are not in dispute, in that both parties agree Google Earth performs a "greater than" test, infringement as to this limitation of Claim 1 may be resolved as a question of law.  I find that the accused Google Earth products do not infringe this limitation as a matter of law, because the accused products continue downloading additional blocks even when the desired resolution level has been reached (and do not stop until a higher than desired level has been reached).  Consequently, I will grant Google's motion for summary judgment of noninfringement on this basis.

---

[7] The illustrative situation provided by Skyline at the summary judgment oral argument, where the desired resolution level is 14.8 [Skyline Slide #33], is unconvincing for at least two reasons.  First, it does not address how the '189 patent and Google Earth treat whole number resolution levels.  For a desired resolution level of 14, for example, the '189 patent dictates that downloading must stop when the Level 14 data block is delivered.  Google Earth, in contrast, would download until the block greater than Level 14, *i.e.*, Level 15, has been downloaded.  Second, the '189 patent does not seem logically able to handle non-whole number resolution levels.  Under Skyline's scenario, no data block with resolution level 14.8 would ever be downloaded, so the conditional of the '189 patent ("downloading . . . if the provided block . . . is not at the indicated resolution level") would *always* be satisfied, meaning downloading would never stop, even when Level 15 data had been received.

      *b.    Claim 12*

Claim 12 reads:

> Apparatus for providing data blocks describing three-dimensional terrain to a render[er],[8] the data blocks belonging to a hierarchical structure which includes blocks at a plurality of different resolution levels, the apparatus comprising:
> - a local memory which stores data blocks corresponding to coordinates proximal to a current viewpoint of the renderer;
> - a communication link, through which the memory receives the data blocks from a remote server;
> - a processor which receives one or more specified coordinates along with indication of a respective resolution level from a renderer, provides the renderer with a first data block which includes data corresponding to the one or more specified coordinates from a local memory, and downloads over the communication link one or more data blocks of a resolution level higher than the resolution level of the first block which include data corresponding to the one or more coordinates if the first block is not from the indicated level.

(col. 18: 12-31).

    Claim 12 tracks the critical elements of Claim 1 (discussed above), although it describes an apparatus, rather than a method. Because the evidence establishes there is no "renderer" in Google Earth, no coordinates are passed along with an associated resolution level, and downloading continues even when the desired resolution level has been reached, summary judgment of

---

    [8] As I have previously noted, "render" appears to be a typographical error and neither party contends that the term should be construed as anything other than "renderer."

15

noninfringement is appropriate on Claim 12, as well.

    c.    *Other Asserted Claims*

Google has moved for summary judgment of noninfringement on all other asserted claims of the '189 patent. Google argues, and Skyline concedes, that all other claims are essentially dependent on either Claim 1 or Claim 12, so they cannot be infringed if Claims 1 and 12 have not been infringed. *See* Skyline's Memorandum in Support of Its Motion for Summary Judgment of Validity, p. 7, n. 7 ("The same claim elements from Claims 1 and 12 are contained in all of the other asserted claims of the '189 Patent.") At a minimum, all other ostensibly independent claims are based on the idea of a renderer providing and receiving data, thus the absence of a renderer in Google Earth is dispositive, and I consequently will grant summary judgment of noninfringement on all other asserted claims of the '189 patent.

### III. CONCLUSION

For the reasons discussed in more detail above, I GRANT Google's motion for summary judgment on noninfringement and DENY Skyline's motion for summary judgment on infringement. In addition, I DENY both motions for summary judgment on the validity question, WITHOUT PREJUDICE to rebriefing and reassertion on or before April 20, 2007. No later than April 20, 2007, the parties shall file a joint status report outlining what further steps are necessary to reduce this case to judgment. The

trial date in this matter set for June 4, 2007 and related pre-trial orders are vacated.

/s/ Douglas P. Woodlock

_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE